# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DAVID E. SEARCY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-00806-DGK |
| | ) |
| GARRETT LYNCH, *et. al,* | ) |
| | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This civil rights action arises from Plaintiff David Searcy's allegations that Kansas City, Missouri Police Department Officer Garrett Lynch and Sergeant Jonathan Rivers (collectively, "Defendants") arrested him without probable cause. Count I, the sole remaining count,[1] asserts a wrongful arrest claim in violation of 42 U.S.C. § 1983.

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 20) on the remaining claim. The motion is GRANTED for two reasons: (1) Plaintiff sued Defendants in their official capacities only, and police officers sued in their official capacities are not "persons" capable of being sued under § 1983; and (2) qualified immunity bars Plaintiff's claim.

## Background

On November 7, 2015, Defendants, along with Officer Bryce Rains, responded to a single-vehicle accident at East 43rd Street and Blue Ridge Cutoff in Kansas City, Missouri. Officer Rains parked his patrol car at the top of the hill and stayed there to block traffic, while Defendants were at the bottom of the hill investigating the accident scene.

---

[1] Plaintiff's Complaint also contained a state common law claim for malicious prosecution. On January 23, 2019, the Court granted (Doc. 13) Defendant's unopposed motion for summary judgment on this claim because the statute of limitations had run.

Aside from the investigating officers, the accident scene involved three people: the driver[2], the car owner[3], and the Plaintiff.

The car involved in the accident was suspected to have been driven by Myron Berry ("the driver"), who was not the car's owner. Soon after the officers arrived, an individual claiming to be the car's owner arrived and confirmed that Berry had been driving. While Officer Lynch and Sergeant Rivers were interviewing the car's owner, the Plaintiff walked into the accident scene. At this time, Sergeant Rivers did not see Plaintiff walking around the scene.

Around that same time, the driver admitted to Officer Rains that he had been driving the car when it crashed. Officer Rains, still located at the top of the hill out of sight from Defendant, radioed Sergeant Rivers that the driver was walking down the hill towards him. Sergeant Rivers relayed to Officer Lynch that the driver was on the scene. Then, Sergeant Rivers left the scene to tend to another, unrelated crime.

Around the time Sergeant Rivers left the scene, the driver approached Officer Lynch's location. It is disputed whether Officer Lynch talked to the driver at this time. Regardless, at some point during Officer Lynch's investigation, the driver walked up the hill and away from the accident scene with Plaintiff.[4] Plaintiff returned after a few minutes, but the driver never did.

Officer Lynch then requested that Sergeant Rivers return to the scene to assist in the investigation. Upon Sergeant Rivers' arrival, Officer Lynch told Sergeant Rivers that he saw Plaintiff run up to the driver during the investigation, heard Plaintiff tell the driver he needed to talk to him, and then watched Plaintiff and the driver walk away from the scene. Officer Lynch

---

[2] Myron Berry was the driver of the vehicle when it crashed.
[3] Laqrisha Roston was the owner of the vehicle. (Doc. 27-2 at 5).
[4] Plaintiff attempts to create a controverted material fact by quibbling with whether he walked with the suspect away from the scene or took the suspect away from the scene. This distinction is irrelevant. As discussed below, Plaintiff admitted several times that he began talking to the suspect and then walked with the suspect away from the accident scene that Officer Lynch and Sergeant Rivers had been actively investigating.

further informed Sergeant Rivers that he tried to get them to stop walking away but was unsuccessful, and that the driver had not returned.

Based on this information, Sergeant Rivers questioned Plaintiff about what had happened. Sergeant Rivers' patrol car video recorded the following exchange between them:

> <u>Plaintiff</u>: There seems to be some confusion here. This officer started yelling at me. First, I asked why he's yelling at me. He said, "Well, you let this gentleman go up the street." I said, "This gentleman seemed to be confused. I asked him what the problem was, and he didn't know where he was at." I said, "Were you driving the car?" He said, "No." So I said, "Come with me up the street." I came back down here and was talking to this young lady. I don't know whose name she gave that was driving the car. She said, "No, I didn't." This officer tried to make her say that she said somebody was driving her car. I said, "Officer, that's not what he said...she said." He said, "Step behind." I backed up. He said, "No, I said 'Step behind me.'" I said, "Officer, I am behind you." And then he told me to go away. So I went away. (Unintelligible). I came over here. I said, "Are you finished with your investigation?" He told me, I was impeding the investigation. So I said, "Okay." I was, "Are you through with the investigation?" "Yes." He said, "Do you want a city tow?" She said, "No."
>
> …
>
> <u>Sgt. Rivers</u>: Okay. Who did you take away from this scene?
>
> <u>Plaintiff</u>: Some gentleman…I didn't take anyone…okay, wait a minute, first of all, I didn't take anybody away. I just started walking.
>
> <u>Sgt. Rivers</u>: Okay. Who did you walk away?
>
> <u>Plaintiff</u>: I have no idea who this gentleman was.
>
> <u>Sgt. Rivers</u>: Okay.
>
> <u>Plaintiff</u>: He never said he was a suspect. He never accused him of being a suspect.
>
> <u>Sgt. Rivers</u>: My question is: why are you involved in my investigation?
>
> <u>Plaintiff</u>: First of all, I'm a pastor. I live up the street.

3

> Sgt. Rivers: Turn around and put your hands behind your back, Sir, you're going to jail.

Exhibit C, Sgt. Rivers' Patrol car video, time-stamp 8:26:58; Sgt. Rivers' Aff. ¶ 27 (Doc. 20-3).

Sergeant Rivers and Officer Lynch then arrested Plaintiff for violation of Kansas City, Missouri, Ordinance 50-44, hindering an investigation. During the arrest, the following interaction occurred between Plaintiff and Officer Lynch:

> Off. Lynch: You said, "You're going with me tonight."
>
> Plaintiff: No, I did not. I said, "He's walking up the street." I did not touch anybody.
>
> Off. Lynch: You also said on your video recording that you said that you took him up there to talk about God?
>
> Plaintiff: I did. We walked but did I touch anybody?
>
> Off. Lynch: You did. So now you did take him. So now you did take him.
>
> Plaintiff: Didn't I talk to you about God?
>
> Off. Lynch: So now you did take him.
>
> Plaintiff: No. Can I talk to you about God without touching you?

Exhibit C, Sgt. Rivers' Patrol car video, time-stamp 8:31:13; Sgt. Rivers' Aff. ¶ 24 (Doc. 20-3).

By this point, another officer had arrived to assist in the investigation, and Plaintiff recounted the night's events to him and Officer Rains:

> Plaintiff: I was going home. I seen that car turned over right there. Stopped. Came over here. A guy (unintelligible). A girl was there and a guy. And he was talking to me. And I said, "Was you driving?" And he said, "No." And I said, "Well, walk with me back up this way." I walked to the top of the hill. The girl was down there. (unintelligible). And uh, (unintelligible) he said, "Where'd that guy go?" He said, he's driving. No, he wasn't driving. But anyway, he said I interfered with his investigation. The officer started yelling at me. So I said, "Will you please call me

a sergeant?" He said, "Who are you?" I said, "I'm a minister." So then they said (unintelligible).

Exhibit B, Officer Rains' Aff. ¶ 17 (Doc. 20-2); Exhibit A, Officer Rains' patrol car video, time-stamp 8:40:05; Exhibit E, Officer Lynch's Aff. ¶ 22 (Doc. 20-4); Exhibit F, Officer Oropeza's wagon video, time-stamp 8:40:03.

Following his arrest, Plaintiff filed this lawsuit against Defendants. Relevant to summary judgment on Plaintiff's § 1983 claim, the Complaint alleges, "All conduct of Defendant Lynch, as alleged herein, was taken under color of state law, in his capacity as a Police Officer of the Kansas City Board of Police Commissioners." Compl. at ¶ 6. It similarly alleges, "All conduct of Defendant Rivers, as alleged herein, was taken under color of state law, in his capacity as a Police Officer of the Kansas City Board of Police Commissioners." Compl. at ¶ 7. No other entities are named as defendants. To remedy the alleged § 1983 violation, the Complaint seeks actual damages, punitive damages, and attorneys' fees.

## Standard of Review

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment bears the burden of showing that there is no genuine dispute as to any material fact. *Celotex Corp*, 477 U.S. at 323. When a party is asserting qualified immunity, "[t]he party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008).

5

Qualified immunity protects a police officer from liability for damages in a 42 U.S.C. § 1983 action unless the officer's conduct violated a clearly established constitutional or statutory right. *Winslow v. Smith*, 696 F.3d 716, 730 (8th Cir. 2012) (citing *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). Whether an officer is entitled to qualified immunity depends on two questions: "'(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.'" *Id*. at 730–31 (quoting *Brown*, 574 F.3d at 496). The court may address the questions in any order, but the officer will be found immune unless both are answered affirmatively. *Id*. at 731 (citation omitted).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)). "To overcome qualified immunity, a plaintiff must be able to prove that 'every reasonable official would have understood that what he is doing violates' a constitutional right[.]" *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015) (quoting *al–Kidd*, 131 S. Ct. at 2083). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

**Discussion**

**I.  Plaintiff sued Officer Lynch and Sergeant Rivers in their official capacities only, and they are not amenable to being sued in their official capacities only.**

42 U.S.C. § 1983 creates a "species of tort liability" for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Under § 1983, it is unlawful for any "person" acting under color of law to deprive another of his civil rights.

State officials, including police officers, may be named in § 1983 lawsuits in either their official capacity, their personal (or "individual") capacity, or both. "An official capacity suit attempts to sue the government entity by naming the officer as a defendant, whereas personal capacity suits 'seek to impose individual liability upon a government officer for actions taken under color of law.'" Erwin Chemerinsky, FEDERAL JURISDICTION, § 8.6 Who Is a "Person" for Purposes of § 1983 Liability? The Liability of Individual Officers (7th Ed.) (2016) (*quoting Hafer v. Melo*, 502 U.S. 21, 25 (1991)). A state official sued in an official capacity may be sued only for prospective relief, such as injunctive relief, not damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). To sue a police officer for damages, as Plaintiff is attempting to do here, the officer must be sued in his or her personal capacity. *Hafer*, 502 U.S. at 27.

Defendants argue Plaintiff's claim fails as a matter of law because he has sued them in their official capacities only.

Plaintiff responds that he has sued Defendants in only their personal capacities, thus they are amenable to suit under the statute.

The Court finds Plaintiff's pleading is insufficient to sue Defendants in their personal capacity. The Eighth Circuit has recently reaffirmed that a plaintiff must present "more than an ambiguous pleading to state an individual-capacity § 1983 claim." *Remington v. Hoopes*, 611 F.

App'x 883, 885 (8th Cir. 2015) (*citing Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007)). A plaintiff must present a "'clear statement' or a 'specific pleading' indicating that the plaintiffs are suing the defendants in their individual capacities." *Id*. (*citing Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ( "[S]pecific pleading of individual capacity is required . . .."); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("[A] clear statement that officials are being sued in their personal capacities" is required.)). The Eighth Circuit has "repeatedly stated that section 1983 litigants wishing to sue government agents in both [individual and official] capacities should simply use the following language: 'Plaintiff sues each and all defendants in both their individual and official capacities.' This language guarantees that the defendant receives prompt notice of his or her potential personal liability." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (holding that when the capacity in which the defendant is sued is ambiguous, there is a presumption against personal capacity claims.) (internal citations omitted) (alteration added).

In this case, the Complaint contains no clear statement indicating Plaintiff is suing Defendants in their personal capacity. Accordingly, the Court holds he has sued them in their official capacities only. *See, e.g., Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) ("Because Kelly's complaint does not include an express statement that she is suing the individual defendants in their individual capacities, we consider her suit to be against the defendants in their official capacity.") (quotation omitted). Because individual defendants sued in their official capacity are not "persons" amenable to being sued under § 1983, Defendants are entitled to summary judgment on Count I.

## II. Alternatively, Defendants are entitled to qualified immunity.

Even if Plaintiff also sued Defendants in their individual capacities, summary judgment is still appropriate because the officers are entitled to qualified immunity.

8

A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause.[5] *See* U.S. Const. amend. IV; *United States v. Watson*, 423 U.S. 411, 414-15 (1976). Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrested has committed a crime. *See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In determining whether an officer had probable cause, a court must "examine the events leading up to the arrest, and then decide whether the facts, viewed from the standpoint of an objectively reasonable . . . officer amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal quotations and citation omitted). So long as probable cause for one crime exists, whether the officers had probable cause to arrest for other offenses is immaterial. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). And even when, with the benefit of hindsight, a law enforcement officer lacks probable cause to make an arrest, the officer is entitled to qualified immunity if he has "arguable" probable cause—that is, if he reasonably (but wrongly) believes probable cause exists. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008).

Here, the officers are entitled to qualified immunity because they had probable cause to believe Plaintiff had committed the crime of hindering. Under Kansas City, Missouri Ordinance 50-44, a person commits the crime of hindering if he or she "in any way or manner hinder[s], obstruct[s], molest[s], resist[s] or otherwise interfere[s] with . . . any officer of the city police department . . . in the discharge of his/her official duties." The uncontroverted facts establish that while Officer Lynch was investigating the accident, Plaintiff told Berry—the suspected driver of the vehicle—to "walk with me back up this way." The two men then left the accident scene together. Berry never returned. When Plaintiff returned, he interrupted Officer Lynch while the

---

[5] The analysis for unlawful arrest claims brought under the Fourteenth Amendment is identical to those brought under the Fourth Amendment. *See Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). Thus, the Court analyzes Plaintiff's claims under the Fourth Amendment.

officer was attempting to question the vehicle's owner about who was driving the car at the time of the accident. Based on the events leading up to that point, an objectively reasonable officer could easily find that Plaintiff was attempting, for whatever reason, to obscure Berry's role in the accident. Thus, Defendants had arguable probable cause—if not actual probable cause—to arrest Plaintiff for hindering the investigation in violation of Kansas City Ordinance § 50-44. Thus, they are entitled to qualified immunity.

## **Conclusion**

Because Plaintiff sued the officers in their official capacities only, Defendants are not amenable to suit for damages under 42 U.S.C. § 1983. But even if he had sued Defendants in their personal capacities, the officers are entitled to qualified immunity. Thus, Defendants' motion is GRANTED.

**IT IS SO ORDERED.**

Date: October 23, 2019 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT